**Judith SCHMIDT, Plaintiffs,**

v.

**MULTIMEDIA HOLDINGS CORP.**
**d/b/a News–Press, Defendant.**

**No. 6:04–CV–186–ORL–31KRS.**

United States District Court,
M.D. Florida,
Orlando Division.

Nov. 10, 2004.

Jeremy D. Friedman, Downs Brill Whitehead, Coral Gables, FL, Mark A. Goldstein, Wolfe and Goldstein, P.A., Miami, FL, for Plaintiffs.

Luca R. Bronzi, Hogan & Hartson L.L.P., Miami, FL, David Stockton Hendrix, Gray Robinson, P.A., Tampa, FL, Jack A. Kirschenbaum, GrayRobinson,

P.A., Melbourne, FL, Carol A. Licko, Hogan & Hartson L.L.P., Miami, FL, William K. Thames, II, Lozier, Thames & Frazier, P.A., Pensacola, FL, Parker D. Thomson, Hogan & Hartson L.L.P., Miami, FL, for Defendant.

## ORDER

PRESNELL, District Judge.

This case is before the Court on Defendant Multimedia Holding Corp d/b/a News–Press' ("News–Press") Motion to Dismiss (Doc. 89) and Plaintiff Judith Schmidt's Response (Doc. 94).

## I. BACKGROUND

Plaintiff has brought the instant case against News–Press for alleged violations of the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721, *et seq.* On behalf of herself and perhaps as many as 479,500 proposed class members, Plaintiff alleges in her Complaint (Doc. 85) that News–Press engaged in the following conduct as an actionable wrong:

a. From the Florida Department of Highway Safety and Motor Vehicles ("State"), News–Press obtained and continues to possess for marketing purposes certain information pertaining to the Plaintiff and proposed class members,

b. News–Press obtained the information without Plaintiff's or the proposed class members' express consent or waiver,

c. "upon information and belief" the State also failed to obtain such consent or waiver, and

d. "upon information and belief" News–Press knew or should have known that the State failed to obtain such consent or waiver.

(Doc. 85 ¶¶ 28, 30–34). Based on News–Press' obtainment of information, Plaintiff claims to "have suffered actual damages in the form of mental distress, monetary loss concerning the lost value of their personal information, nuisance, and annoyance;" and, accordingly, Plaintiff seeks to recover a minimum $2,500 statutory award for herself and for each proposed class member. (*Id.* ¶¶ 48–49). Based on News–Press' continued possession of information, Plaintiff seeks equitable relief in the form of a court-ordered destruction of the information News–Press obtained. (*Id.* ¶¶ 53–54). Based on a further allegation that News–Press knew of and intentionally flouted the DPPA, Plaintiff seeks punitive damages. (*Id.* ¶ 47). Plaintiff also seeks attorneys' fees and costs for bringing this case.

An unenforced amendment to the DPPA is the genesis of this case. In 1994, Congress enacted the DPPA to limit the release of information that drivers' license recipients are required to submit to states for the legal privilege of driving motor vehicles. Originally, the DPPA provided an "opt-out" procedure for information disclosures for marketing purposes—a state could release information for marketing purposes so long as the person to whom it pertained could, by request, prevent the release of their information. *See* 18 U.S.C. § 2721(b)(12)(1994). In 1999, however, Congress amended the DPPA to provide an "opt-in" procedure—a state cannot release information for marketing purposes without the express consent of the person to whom the information pertains. *See* 18 U.S.C. § 2721(b)(12)(1999). Plaintiff alleges that the State failed to follow the DPPA's amendment upon its effective date, and News–Press thereafter obtained

Plaintiff's and proposed class members' information in violation of the DPPA's current opt-in requirement. (Doc. 85 ¶ 13).

Plaintiff relies on the following DPPA provisions as her basis for the instant case:

(a) **Cause of Action.**—A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under [the DPPA] shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.

(b) **Remedies.**—the court may award—

(1) actual damages, but not less than liquidated damages in the amount of $2,500;

(2) punitive damages upon proof of willful or reckless disregard of the law;

(3) reasonable attorneys' fees and other litigation costs reasonably incurred; and

(4) such other preliminary and equitable relief as the court determines to be appropriate.

18 U.S.C. § 2724(a)-(b).

In response to Plaintiff's claims, News–Press has filed a Motion to Dismiss, under Federal Rule of Civil Procedure ("Rule") 12(b)(1), for lack of subject matter jurisdiction and, under Rule 12(b)(6), for failure to state a claim upon which relief can be granted. As to jurisdiction, News–Press asserts that Plaintiff has no standing—specifically, Plaintiff has not sustained an "injury in fact," which is a necessary element for a justiciable case or controversy under Article III § 2 of the United States Constitution. News–Press also asserts that Plaintiff's claims are not ripe for jurisdictional purposes because Plaintiff has not

been injured in any way and Plaintiff may never suffer an injury. As to whether Plaintiff states cognizable claims for relief, News–Press asserts that Plaintiff has failed to state a claim for actual (and thus liquidated) damages, and Plaintiff has failed to make a proper showing for equitable relief.

## II. STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(1) come in two forms that may involve substantially different standards of review. First, there are "facial attacks," which "require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction ...." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir.1990). As is generally the standard for Rule 12(b)(6) motions to dismiss, a court assessing a "facial attack" on jurisdiction is to assume the allegations in the complaint are true and not look outside the pleadings and attached exhibits. *See id.* Second, there are "factual attacks," which challenge the factual basis asserted for jurisdiction. *Id.* If a factual attack on jurisdiction regards an issue reasonably distinct from the merits, the court may weigh conflicting written and oral evidence and decide for itself whether jurisdiction exists. *See, e.g. Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 512–13 (5th Cir.1980) (affirming Rule 12(b)(1) dismissal where evidence outside the pleadings revealed a lack of state action and thus no jurisdictional basis for a civil rights claim). Nevertheless, in regard to motions to dismiss, judicial economy and fairness require a defendant to proceed under Rule 12(b)(6) when challenging the merits of a plaintiff's claim. *Lawrence*, 919 F.2d at 1529 (citing *Williamson v. Tucker*, 645 F.2d 404, 415–16 (5th Cir.1981)).

In ruling on a 12(b)(6) motion to dismiss for failure to state a claim, a court must

view the complaint in the light most favorable to the plaintiff, *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), and must limit its consideration to the pleadings and any exhibits attached thereto. FED.R.CIV.P. 10(c). *See also GSW, Inc. v. Long County, Ga.,* 999 F.2d 1508, 1510 (11th Cir.1993). A court is to assume that the allegations are true and liberally construe them in the plaintiff's favor. *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). Dismissal for failure to state a claim is inappropriate unless it appears beyond a doubt that the plaintiff cannot prove any set of facts that support a claim for relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). If, however, no construction of the factual allegations will support a cause of action in light of a dispositive issue of law, a court may dismiss a legally insupportable claim for relief. *See Marshall County Bd. of Educ. v. Marshall County Gas Dist.,* 992 F.2d 1171, 1175 (11th Cir.1993).

## III. ANALYSIS

At issue, initially, is whether the Court has subject matter jurisdiction. News–Press argues that (1) the Court need not accept Plaintiff's allegations that she has sustained actual damages or has been injured; (2) Plaintiff has not been harmed in any way; and (3), unless and until there is some further action on News–Press' part, this case is not ripe for adjudication and Plaintiff has no standing to sue.

### A. Jurisdiction and the Requirements of Standing and Ripeness in Regard to the DPPA

■ Article III of the U.S. Constitution, in relevant part, provides that the "judicial Power shall extend to all *Cases,* in Law and Equity, arising under this Constitution .... [and] to *Controversies* ...." U.S. CONST. Art. III, § 2 (emphasis added). Derived from this case-or-controversy language is the concept of standing, which limits the types of matters appropriate for judicial determination. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). First among the irreducable constitutional requirements for standing is that the plaintiff who brings a claim in federal court "must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized .... and (b) actual or imminent, not 'conjectural' or 'hypothetical.' " *Id.* (citations omitted). In this regard, standing addresses whether an alleged injury is sufficient to raise an Article III case-or-controversy and whether the plaintiff is the appropriate person to complain about that alleged injury. *See id; see also* ERWIN CHEMERINSKI, FEDERAL JURISDICTION § 2.4 (4th ed.2003).

Also derived from Article III's case-or-controversy language and from prudential considerations is the concept of ripeness, which is "designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Levy v. Miami–Dade County,* 358 F.3d 1303, 1305 (11th Cir.2004) (internal quotation marks and citation omitted). Ripeness, more than standing, focuses on whether a sufficiently concrete dispute has arisen. *See Ohio Forestry Ass'n, Inc., v. Sierra Club,* 523 U.S. 726, 733, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998). Ripeness may turn on whether a delay in adjudication would cause hardship, and that inquiry, furthermore, may turn on whether an injury has occurred. *Id.* In *Ohio Forestry,* for instance, the Supreme Court found that the Sierra

Club's challenge to a federal agency's plan to allow logging on federal lands was not ripe because logging permits had not been issued, the Sierra Club could later challenge specific logging proposals, and thus no sufficiently certain injury was imminent. *Id.* at 733–34, 118 S.Ct. 1665. In that regard, ripeness addresses whether an injury has yet occurred. CHEMERINSKI, *supra.*

As both standing and ripeness turn on the existence, if any, of an injury, whether a dispute is ripe and a plaintiff has standing may depend on what constitutes an "injury." It is well-established that an actual or threatened injury sufficient to meet Article III case-or-controversy "may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Warth v. Seldin,* 422 U.S. 490, 500, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (citations and internal quotation marks omitted). To some degree, Congress may define an injury, for case-or-controversy purposes, where one may not have existed under the common law. *See Lujan,* 504 U.S. at 580, 112 S.Ct. 2130 (Kennedy, J., concurring). In *Federal Election Comm. v. Akins,* 524 U.S. 11, 20–22, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998), for instance, the Supreme Court found that the Federal Election Campaign Act created a right to information and, consequently, found an injury sufficient for standing where the FEC allegedly failed to obtain and produce information in violation of the Act. The injury was to the right to obtain (via the FEC) financial information from a politically active private organization, a right solely secured by statute. *See id.*

In the instant case, News–Press' jurisdictional challenge is focused less on an injury contemplated by the DPPA's private cause of action and more on some analogy to common-law torts, which require an element of damage. Specifically, News–Press contends that "Plaintiff has now had three opportunities to affirmatively plead that he [sic] was subject to an act, and how and when that act occurred, which created actual damages from any form of contact by Defendant." The plain language of the DPPA, however, grants individuals a right not to have information from their state motor vehicle record obtained for a purpose not permitted under the DPPA. 18 U.S.C. § 2724(a) (creating a private cause of action against one "who knowingly obtains, discloses *or* uses personal information, from a motor vehicle record, for a purpose not permitted under [the DPPA] . . . .")(emphasis added). If News–Press knowingly obtained Plaintiff's personal information from the State for a purpose not permitted under the DPPA, an injury has occurred such that Plaintiff has standing to bring a cause of action that is ripe for adjudication.

With its 1999 "opt-in" amendments, the DPPA now provides that a State may disclose personal information for "marketing or solicitations if the State has obtained the express consent of the person to whom such personal information pertains." 18 U.S.C. § 2721(b)(12). Among the allegations of her Complaint, Plaintiff asserts that, after the DPPA's 1999 opt-in amendments came into force, News–Press obtained from the State Plaintiff's personal information for marketing purposes, but did not obtain her consent, and knew or should have known that the State also had not obtained her express consent. On the assumption that this is true, Plaintiff has suffered a statutorily defined "injury," has standing, and this case is ripe for adjudica-

tion.[1]

News–Press is correct in stating that courts need not always accept the allegations of a complaint as true when a defendant makes a "factual attack" on jurisdiction. Nevertheless, News–Press' challenge to the Plaintiff's claims is essentially a challenge to their merit. In light of judicial economy and fairness, that challenge must be adjudged as a "facial attack" on jurisdiction or (otherwise) under the standard applicable to Rule 12(b)(6) motions to dismiss for failure to state a claim; either way, the Court must assume the truth of the Complaint's factual allegations. *See Lawrence,* 919 F.2d at 1529. Under those standards, Plaintiff's allegations establish standing, ripeness, and jurisdiction. This is not to say, however, that Plaintiff has appropriately stated a claim for each form of relief she seeks.

**B. Possible Remedies, Under the DPPA, for Obtainment or Use of Personal Information for Marketing Purposes**

News–Press contends that Plaintiff has failed to state a proper claim under the DPPA for actual damages and, thus, for liquidated damages. News–Press interprets the DPPA's language—"[t]he court may award—(1) actual damages, but not less than liquidated damages in the amount of $2,500 ...."—to mean that actual damages are a precondition to liquidated damages. *See* 18 U.S.C. § 2724(a). Initially, Plaintiff argues that $2,500 is the minimum damage award under the DPPA

regardless of whether she suffered actual damages. Plaintiff also argues, however, that she has properly alleged actual damages. The parties' dispute concerns both the construction of the DPPA's damages provision as a whole and the meaning of the term "actual damages."

The task of statutory construction begins, and normally ends, with the plain meaning of a statutory provision's words and wording. *In re Paschen,* 296 F.3d 1203, 1207 (11th Cir.2002); *United States v. Padilla–Reyes,* 247 F.3d 1158, 1163 (11th Cir.2001). The first step "is to determine whether the language at issue has a plain meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* at 341, 117 S.Ct. 843.

**1. The Privacy Act of 1974 as an Exemplar**

In *Doe v. Chao,* 540 U.S. 614, 124 S.Ct. 1204, 157 L.Ed.2d 1122 (2004), the Supreme Court interpreted the following damage provision from the Privacy Act of 1974:

> [T]he United States shall be liable to the individual in an amount equal to the sum of—
>
> (A) actual damages sustained by the individual as a result of the refusal or

---

**1.** In this regard, the Court expresses no opinion as to whether the "knowing" element of the DPPA's private cause of action is fulfilled simply by News–Press knowing that it was obtaining Plaintiff's personal information. Plaintiff has alleged that the State did not obtain her express consent and News–Press knew or should have known that the State had not done so.

failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000 . . . .

5 U.S.C. § 552a(g)(4). The Court found, "through a straightforward textual analysis," that the phrase "a person entitled to recovery" directly refers to the preceding clause about an individual who has sustained actual damages. *Doe*, 124 S.Ct. at 1208. From a textual standpoint, the Court determined that the Privacy Act required proof of some actual damages as a precondition to the Act's $1000 damage award. *See id.*

The Privacy Act (to give some general context) is an Act meant "to protect the privacy of individuals identified in information systems maintained by Federal agencies . . . ." *Id.* at 1207 (citing Privacy Act of 1974, § 2(a)(5), 88 Stat. 1896). Among other things, the Act provides directives to agencies for the maintenance and disclosure of records. 5 U.S.C. § 552a(b)-(e). For an agency's failure to comply with those directives, the Act provides an individual who is adversely affected a cause of action against the United States. *Id.* § 552a(g)(1)(D).

Although the Court, in *Doe*, initially undertook a textual analysis of the Privacy Act's damages provision, the Court's analysis later turned to the Act's history. The Court found a disconnect between (1) the plaintiff's argument that "a person entitled to recovery" was any individual adversely affected by an agency's noncompliance with the Act; and (2) "the traditional understanding that tort recovery requires not only wrongful act plus causation reaching to the plaintiff, but proof of some harm for which damages can reasonably be as-

sessed." *Doe*, 124 S.Ct. at 1209. To supplement its textual analysis, the Court twice compared common-law torts to the harms the Privacy Act addresses.

First, the Court recognized that the common law provided "general damages"—"a monetary award calculated without reference to specific harm"—for defamation *per se*. *Id.* at 1209 n. 3. Defamation *per se* is presumptively damaging defamation, meaning that the harm of the defamatory statement was, under the common law, a fact of common notoriety. *See, e.g., Commander v. Pedersen*, 116 Fla. 148, 156 So. 337, 340–41 (1934); RESTATEMENT (FIRST) OF TORTS § 571 (1938) (imputation of criminal conduct), § 572 (imputation of loathsome disease), § 573 (imputation affecting business), § 574 (imputation of unchastity). The Court, however, did not consider the analogy between the Privacy Act and defamation *per se* to be appropriate or compelling in light of the Act's legislative history. *Doe*, 124 S.Ct. at 1209–10 (finding that a reference to "general damages" had been trimmed from the Act's final version).

Thereafter, the Court compared the Privacy Act's remedial scheme to the common law's treatment of defamation *per quod*. *See id.* at 1211 (citations omitted). Defamation *per quod* regards statements that on their face, in their usual and natural signification, are not considered presumptively damaging. *See, e.g., Piplack v. Mueller*, 97 Fla. 440, 121 So. 459, 459 (1929); RESTATEMENT (FIRST) OF TORTS § 575 (1938). To recover "general damages" for defamation *per quod*, a plaintiff must first demonstrate "special damages" [2] or "special harm"—some actual, quantifia-

---

**2.** The terms "special damages" and "special harm" are synonymous. In the defamation context, the Restatement (First) of Torts

§ 575 uses the term "special harm" in the same sense as the common law used the term

ble pecuniary loss. *Doe,* 124 S.Ct. at 1211; RESTATEMENT (FIRST) OF TORTS § 575. In light of that historical insistence, the Court found that "it was hardly unprecedented for Congress [in the Privacy Act] to make a guaranteed minimum [recovery] contingent upon some showing of *actual damages,* thereby avoiding giveaways to plaintiffs with nothing more than 'abstract injuries.'" *Id.* (emphasis added).[3]

*Doe's* analysis of the Privacy Act was not offhanded in its reference to common-law distinctions between remedies in the defamation context. Those common-law distinctions were historical precedents for the Act's remedial scheme.

With a mandate from Congress, the Privacy Protection Study Commission was formed to study and make recommendations for changes to the Privacy Act. *See* Privacy Act of 1974, § 5, Pub.L. No. 93–579, 88 Stat. 1896. In regard to the Acts' remedial scheme, the Commission found that:

> Traditionally, damages have been divided into two classifications, general and special. Compensation for *any* injury done to an individual is available under a claim of general damages. An individual can make claims for losses due to pain and suffering, for example, even though it is impossible to fix a precise dollar value to such an injury. Special damages, on the other hand, only compen-

sate for injury that has caused clear economic loss to the individual. The Commission has found that there is no generally accepted definition of "**actual damages**" in American law, but the Commission has concluded that, **within the context of the Act, the term was intended as a synonym for special damages as that term is used in defamation cases.** * * *

The legislative history and language of the Act suggest that Congress meant to restrict recovery to specific pecuniary losses until the Commission could weigh the propriety of extending the standard of recovery.

Personal Privacy in an Information Society: the Report of the Privacy Protection Study Commission 530 (July 1977) (bold emphasis added). The Commission concluded that the term "'actual damages' should be discarded in favor of the more traditional and clearer term, special damages," and the Commission recommended that the Act be amended to:

> permit the recovery of special and general damages sustained by an individual as a result of a violation of the Act, but in no case should a person entitled to recovery receive less than the sum of $1,000 or more than the sum of $10,000 for general damages in excess of the dollar amount of any special damages.

*Id.* at 530–31.

As the Commission's report indicates and as *Doe* confirms, when Congress en-

---

"special damages." *See Ratcliffe v. Evans,* [1892] 2 Q.B. 524, 528, 531.

**3.** To this point, the Court cited *Los Angeles v. Lyons,* a significant case in regard to the concept of remedy-specific standing. 461 U.S. 95, 101–02, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (finding that a person on whom police previously used a choke-hold had standing to sue for damages but did not prospectively face a reasonable threat of harm for standing to seek an injunction against police use of choke-holds). Standing, there-

fore, may depend on the suitability of a given remedy to an abstract, statutorily defined injury. For instance, one might theorize that an "obtainment" violation under the DPPA provides a private plaintiff standing only to seek an injunction. The outcome in *Doe,* however, did not turn on standing; rather, the possibility of damages (albeit damages assumed not to be appropriately pled) was apparently enough to create a justiciable case or controversy.

acted the Privacy Act, "[it] left the question of general damages ... for another day." *Doe,* 124 S.Ct. at 1209. Since the enactment and the Commission's report, however, the Act has not been amended to remove the requirement of "actual damages." In that regard, the common-law requirement of actual, quantifiable pecuniary loss remains part of the Privacy Act.

### 2. The DPPA, the Common Law, and "Actual Damages"

The DPPA's remedies section begins with the statement: "The court *may* award...." and thereafter lists, among other remedies, "*actual damages,* but not less than *liquidated damages* of $2500." 18 U.S.C. § 2724(a)(1) (emphasis added). The term "may," is generally understood in a permissive or discretionary sense. BLACK'S LAW DICTIONARY 1000 (8th Ed.2004).[4] The term "liquidated damages" is generally understood as "[a]n amount contractually stipulated as a reasonable estimation of *actual damages* to be recovered by one party if the other party breaches." *Id.* at 418 (emphasis added). Textually, therefore, it appears that the damages remedy is premised on the existence of some actual damages, such that a court's discretion is confined to awarding no less than $2,500 if a plaintiff has suffered actual damages from a violation of the DPPA.

The DPPA (to give some general context) is an Act born of concern over the ease with which wrongdoers were able to get information from motor vehicle records to aid in crimes against victims to whom the information pertained. *See* 139 Cong. Rec. S15745–01 (1993) (statement of Senator Boxer) (discussing the use of motor vehicle records as leading to: the murder of actress Rebecca Schaeffer in California, burglaries committed by a gang in Iowa, and a stalker in California finding the whereabouts of young women victims); 140 Cong. Rec. H2518–01 (1994) (statement of Congressman Goss) (same). It is also evident that, to some extent, the DPPA was enacted and amended to give people certain powers to limit businesses from obtaining and using motor vehicle records for marketing purposes. 18 U.S.C. § 2721(b)(12) (1993) (amended 1999). For these and various other reasons, the DPPA provides, among other enforcement mechanisms, a private cause of action to any person whose motor vehicle records are obtained, disclosed, or used for a purpose the DPPA does not explicitly permit. *Id.* § 2724(a).

While the DPPA's "cause of action" provision defines justiciable injuries, the Act's "cause of action" provision (unlike the Privacy Act's) does not purport to require a plaintiff to have suffered any adverse effect. *Id.; cf.* 5 U.S.C. § 552a(g)(1)(D). A private cause of action is, therefore, available under the DPPA without reference to any requirement of damages.

Against this backdrop, the DPPA's "remedies" provision lists remedies available when a defendant knowingly obtains, discloses, or uses the plaintiff's personal

---

**4.** Admittedly, courts sometimes interpret the term "may" to mean "shall" to conform to legislative intent or obvious inferences from the structure and purpose of the statute. *See DIRECTV, Inc. v. Brown,* 371 F.3d 814 (11th Cir.2004). From the discussion below, it does not appear that a mandatory connotation is appropriate in this context. Furthermore, as the term "liquidated damages" involves some minimal requirement of actual damages, either use of the term "may" would not seem to require a damages remedy in the absence of actual damages.

information, from a motor vehicle record, for a purpose other than one the DPPA explicitly permits. 18 U.S.C. §§ 2721(b), 2724(a)-(b). The non-permitted purposes to which personal information could be used are legion—financial crimes and stalking are only two examples of criminal uses, but impermissibly obtained information may also be put to various innocuous uses or no use at all. In essence, the DPPA purports to address, by negative implication, an indefinite and diverse array of impermissible consequences causally linked to the obtainment, disclosure, or use of motor vehicle records.

In the instant case, there is a disconnect between (1) Plaintiff's argument that she may be awarded $2,500 under the DPPA without having suffered any "actual damages," and (2) "the traditional understanding that tort recovery requires not only wrongful act plus causation reaching to the plaintiff, but proof of some harm for which damages can reasonably be assessed." *See Doe,* 124 S.Ct. at 1209. The disconnect is in reference to the term "actual damages."

Of the various terms Congress could have used in the context of a privacy related statute, Congress chose the term "actual damages." In drafting the DPPA, Congress had, as points of reference, the common law, the Privacy Act, and the July 1977 Report of the Privacy Protection Study Commission, to name a few. It is highly unlikely that Congress used similar words in similar statutory contexts while having different meanings in mind.

It is true that the term "actual damages" does not have a fixed meaning in American law. *See Fitzpatrick v. Internal Revenue Service,* 665 F.2d 327, 329 (11th Cir.1982); Personal Privacy in an Information Society, *supra,* at 530. In the context of privacy legislation, however, there is substantial authority for the proposition that Congress views the term "actual damages" as synonymous with the term "special damages," as used in defamation cases. *Id.* Moreover, sound policy indicates that Congress, in taking cues from the common law, would not intend to create a jackpot for plaintiffs with nothing more that abstract injuries. *See Doe,* 124 S.Ct. at 1211.

It is also evident that the DPPA differs from the Privacy Act in the breadth of impermissible consequences, from the most insidious to possibly the barest nuisance, which the DPPA was designed to remedy. Nevertheless, the DPPA provides a private cause of action and explicitly provides for equitable relief. Under the DPPA, a plaintiff with the barest justiciable injury may file suit for injunctive relief, and, if successful, collect attorneys fees and costs as a supplemental remedy.[5] The DPPA's remedies are therefore flexible enough to compensate for apparent differences from the Privacy Act. For the balance, it does not erode the DPPA's remedial intent to read the Acts' similar vocabulary to require the same type of damages. Consistent with the Privacy Act's particular common-law-derived use of the term, "actual damages" would almost always be present and available, as a further remedy, to a person who has suffered concrete injuries such as financial crimes, stalking, or the like through a defendant's violation of the DPPA. Ultimately, no legitimate interest would appear to justify a minimum $2,500 recovery for the DPPA's most abstractly defined injury—obtain-

---

5. The DPPA also provides for punitive damages; however, the Court does not address the question whether punitive damages may be available in the absence of actual damages.

ment—for which the DPPA otherwise provides the incentive (attorneys' fees) and the relief (equitable injunction) for full redress.

Where, as here, Congress has defined an injury at a level of abstraction near Article III's limits on justiciability, prudence counsels against inferring, without a clear statutory mandate, remedies not available under substantially analogous common-law tort theories.[6] *See Doe*, 124 S.Ct. at 1211. Common-law torts reflect centuries of practical experience with fact-sensitive issues. *See, e.g., Ratcliffe v. Evans*, [1892] 2 Q.B. 524. To the extent Congress abstractly defines an injury and provides for remedies in language possibly susceptible to different meanings in different contexts, the common-law presents perhaps the most reliable and authoritative store of guidance on how language should be read in a given context.

Based on the language of the DPPA, the backdrop of privacy legislation, and the analogous common-law requirements to prove defamation *per quod*, the Court finds that the DPPA requires some proof of actual, pecuniary loss to qualify for liquidated damages of $2,500.

In the instant case, to somewhat misleading effect, Plaintiff claims that News–Press obtained motor vehicle records **and** contacted Plaintiff and others for marketing purposes **and/or** obtained the records for marketing purposes. (Doc. 85 ¶ 30). Nevertheless, based solely on the alleged obtainment of the records, Plaintiff claims to "have suffered actual damages in the form of mental distress, monetary loss concerning the lost value of their personal information, nuisance, and annoyance." (*Id.* ¶ 48). Under the DPPA, these allegations are insufficient to state a claim for "actual damages," because they do not state any actual pecuniary losses. *See Fitzpatrick*, 665 F.2d at 331.

Plaintiff's only reference to loss, furthermore, is to some alleged monetary value of the information in her motor vehicle record. In this regard, Plaintiff mischaracterizes the information as a property interest News–Press has taken. The interest associated with one's personal information, as with one's reputation in the defamation context, is not a property right. *See Paul v. Davis*, 424 U.S. 693, 711–12, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (finding that reputation may be protected by a tort cause of action, but it is not a "property" interest the deprivation of which would require due process).

**3. The DPPA's Other Remedies**

In all other respects, Plaintiff states a claim under the DPPA for which relief can

---

**6.** By comparison, an "injury" premised on mere obtainment under the DPPA is a far cry from the notorious harm cause by defamation *per se*. Indeed, the harm, if any, associated with obtainment (or even use) of motor vehicle records for marketing purposes normally will fall well-below the harm associated with common-law defamation *per quod*, a non-self-evident tort found only upon proof of actual, pecuniary loss. *See Doe*, 124 S.Ct. at 1211. Apart even from the tort of invasion of privacy, the obtainment and use of motor vehicle records for marketing purposes does not assume the publication of an individual's per-

sonal information to anyone but the individual. *See, e.g., Cason v. Baskin*, 159 Fla. 31, 30 So.2d 635, 636 (1947) (showing publication as an element of a possibly analogous common-law privacy tort).

Of course, personal information in marketing materials (e.g., credit card offers) could fall into the hands of identity thieves. In that instance, however, actual damages could be traced to (and become a remedy for) a violation of the DPPA.

be granted. Put simply, in light of the allegations in Plaintiff's Complaint and the issues raised in News–Press' Motion to Dismiss, it does not appear beyond doubt that Plaintiff can prove no set of facts to support a claim for other forms of relief under 18 U.S.C. § 2724(b).

## IV. CONCLUSION

Based on the foregoing analysis, Plaintiff's allegations establish standing, ripeness, and jurisdiction; Plaintiff fails to state a claim for actual (and thus liquidated) damages under 18 U.S.C. § 2724(b)(1); but Plaintiff does state a claim for equitable relief under 18 U.S.C. § 2724(b). It is therefore

**ORDERED** that News–Press' Motion to Dismiss (Doc. 89) is **GRANTED**, in part, and **DENIED**, in part. Based on the allegations in the Plaintiff's Complaint (Doc. 85), Plaintiff's claim for actual (and thus liquidated) damages is **DISMISSED.** Otherwise, the Motion is **DENIED.**