[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 26, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-13306

_____

D. C. Docket No. 03-80593-CV-DTKH

JAMES KEHOE,

Plaintiff-Appellant,

versus

FIDELITY FEDERAL BANK & TRUST,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(August 26, 2005)**

Before DUBINA and WILSON, Circuit Judges, and COOGLER*, District Judge.

_____

*Honorable L. Scott Coogler, United States District Judge for the Northern District of Alabama, sitting by designation.

WILSON, Circuit Judge:

This appeal requires that we engage in an exercise of statutory interpretation. The statute at issue is the Driver's Privacy Protection Act, 18 U.S.C. § 2721, *et seq.* ("DPPA"). Having considered the plain text of the statute, we conclude that a plaintiff need not prove actual damages to recover liquidated damages for a violation of the DPPA. Since the district court reached a contrary conclusion, we reverse and remand.

## I.    BACKGROUND

In 1994, Congress enacted the DPPA to limit the release of an individual's personal information contained in his driver's license record to those who had a legitimate and lawful need for the information. Originally, the DPPA implemented an opt-out procedure for driver's license information disclosed for marketing purposes. Under the opt-out procedure, a state could release or sell an individual's driver's license information without the individual's permission so long as the individual was given an opportunity to opt out by requesting that the information not be released. On October 9, 1999, Congress amended the DPPA to require an opt-in procedure. The effective date of this amendment was June 1, 2000. As a result of this amendment, a state's department of motor vehicles cannot disclose an individual's driver's license information without express permission from the

2

individual about whom the information pertains.

Forty-nine states immediately passed legislation to ensure compliance with this amendment to the DPPA. Florida was the only state that did not immediately comply. Instead, Florida waited until May 13, 2004, to amend its public records statute to comply with the DPPA. *See* Fla. Stat. § 119.07(3)(aa)(12); 2004 Fla. Sess. Law Serv. 2004-62 (West).

Fidelity is a publicly owned and locally operated savings bank. From June 1, 2000, to June 20, 2003, on a monthly basis, Fidelity purchased from the State of Florida's Department of Highway Safety and Motor Vehicles ("Florida DMV") the names and addresses of individuals who had registered new motor vehicles or used motor vehicles less than three years old within the preceding month in Palm Beach, Martin, and Broward Counties. Fidelity paid the Florida DMV one cent for each name and address provided. The Florida DMV then forwarded the information electronically to a third-party mass mailing service provider retained by Fidelity. The mass mailing service provider mailed the solicitations to individuals to refinance their motor vehicle loans. Over the course of the three years at issue, Fidelity paid the State of Florida approximately $5,656.00 for the names of approximately 565,600 individuals.

On July 1, 2003, James Kehoe, on behalf of himself and others similarly

3

situated, filed this putative class action. The gravamen of Kehoe's complaint is that Fidelity purchased his personal information from the Florida DMV without his consent. At the conclusion of his complaint, Kehoe requested the following relief: liquidated damages "in the amount of $2,500.00 for each instance in which [Fidelity] obtained or used personal information concerning [Kehoe] and members of the Class;" "punitive damages should the Court find that [Fidelity] acted in willful or reckless disregard of the DPPA;" attorney's fees and costs; the destruction of any personal information unlawfully obtained from the Florida DMV; and "such other relief as the Court deems appropriate."

Fidelity responded to Kehoe's complaint by filing a motion to dismiss the complaint or, alternatively, enter summary judgment in favor of Fidelity. The district court summarily denied Fidelity's motion to dismiss the complaint and deferred ruling on the summary judgment motion until after the completion of discovery. After discovery, Fidelity renewed its motion for summary judgment. The district court concluded that a plaintiff must prove some measure of actual damages to maintain a claim under the DPPA. Because Kehoe had not asserted that he incurred any actual damages, the district court granted summary judgment in Fidelity's favor and denied Kehoe's motion for class certification as moot.

On appeal, Kehoe argues that the district court erred in holding that the

DPPA requires proof of actual damages prior to the award of liquidated damages.

Additionally, Kehoe argues that the district court erred in granting summary

judgment without considering his requests for class certification and injunctive

relief.[1]

## II.   STANDARD OF REVIEW

We review the district court's grant of summary judgment *de novo*, applying

the same legal standards as the district court.  *See Hilburn v. Murata Elecs. N. Am.,*

*Inc.*, 181 F.3d 1220, 1225 (11th Cir. 1999).  The interpretation of a statute is a

question of law subject to *de novo* review.  *DirecTV, Inc. v. Brown*, 371 F.3d 814,

816 (11th Cir. 2004).

## III.   DISCUSSION

### A.   18 U.S.C. § 2724(b), the DPPA's Remedies Provision

The main issue in this case is whether a plaintiff must prove actual damages

before he may recover a liquidated damages award under the DPPA.  This is an

---

[1]The district court granted summary judgment without addressing the other statutory remedies that Kehoe requested in his complaint.  Even if we were to conclude that proof of actual damages was necessary to be awarded liquidated damages, we still would have to remand this case to district court for consideration of the other available remedies requested by Kehoe.

Additionally, Kehoe argues that the district court erred in entering final summary judgment without considering the merits of the pending motion for class certification.  However, it is "within the court's discretion to consider the merits of the claims before their amenability to class certification."  *Telfair v. First Union Mortgage Corp.*, 216 F.3d 1333, 1343 (11th Cir. 2000); *see also Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1297 (11th Cir. 2005), *petition for cert. filed*, 74 U.S.L.W. 3025 (U.S. June 24, 2005).

issue of first impression for our Circuit. In reaching the conclusion that Kehoe could not maintain a claim for liquidated damages under § 2721(b) without proving that he had suffered actual damages, the district court relied upon what it termed "the sum of several legal principles." *See Kehoe v. Fidelity Federal Bank & Trust*, No. 03-80593-CV-DTKH, 2004 WL 1659617, at *6 (S.D. Fla. June 14, 2004). Considering the relevant text of the DPPA as buttressed by instructive dicta in *Doe v. Chao*, 540 U.S. 614, 124 S. Ct. 1204 (2004), we reach the opposite conclusion. A plaintiff need not prove a measure of actual damages to recover liquidated damages under the DPPA, and certainly need not prove actual damages to recover the other types of remedies listed in § 2724(b).[2]

      1.     Textual Analysis of the DPPA

"In construing a statute we must begin, and often should end as well, with the language of the statute itself . . . because we presume that Congress said what it meant and meant what it said." *Harry v. Marchant,* 291 F.3d 767, 770 (11th Cir. 2002)(*en banc*)(internal quotations and citations omitted). "[W]e need not resort to extrinsic evidence, such as legislative history, to discern a statute's meaning if the

---

[2]While the instant case was pending on appeal, another district court in Florida issued an opinion addressing this issue. *See Schmidt v. Multimedia Holdings Corp.*, 361 F. Supp. 2d 1346, 1356 (M.D. Fla. 2004) (holding that a plaintiff must prove some measure of actual, pecuniary loss to receive liquidated damages under the DPPA). To the extent that the reasoning in *Schmidt* diverges from that of the district court in the instant case, we are still not persuaded.

6

statute's meaning is unambiguous." *In re Paschen*, 296 F.3d 1203, 1207 (11th Cir. 2002). "Any ambiguity in the statutory language must result from the common usage of that language, not from the parties' dueling characterizations of what Congress 'really meant.'" *CBS, Inc. v. Primetime 24 Joint Venture*, 245 F.3d 1217, 1225 (11th Cir. 2001).

The sections of the DPPA that are relevant to our analysis are: 18 U.S.C. §§ 2722 and 2724. Section 2722 states, in pertinent part: "**(a) Procurement for unlawful purpose.**– It shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title." 18 U.S.C. § 2722(a). Fidelity does not dispute that a violation of the DPPA occurred – it purchased and used Kehoe's personal information for a purpose that is not permitted under § 2721(b). Since a violation occurred, Kehoe can bring this action pursuant to § 2724. Section 2724, states, in its entirety:

> **Civil action**
> **(a) Cause of action.**– A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter [18 U.S.C. §§ 2721 *et seq.*] shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.
> **(b) Remedies.**– The court may award –
>> **(1)** actual damages, but not less than liquidated damages in the amount of $2,500;

> **(2)** punitive damages upon proof of willful or reckless disregard of the law;
>
> **(3)** reasonable attorney's fees and other litigation costs reasonably incurred; and
>
> **(4)** such other preliminary and equitable relief as the court determines to be appropriate.

18 U.S.C. § 2724. Specifically, at issue is the interpretation of sub-section (b)(1) of § 2724. Fidelity and the district court interpret the language in sub-section (b)(1) to mean that proving actual damages is a condition precedent to receiving liquidated damages in the amount of $2,500.00. Kehoe, however, interprets sub-section (b)(1) as permitting a minimum damages award of $2,500.00 regardless of whether a plaintiff suffered any actual damages. In other words, Kehoe reads sub-section (b)(1) in the disjunctive – that he may receive the greater of his actual damages or $2,500.00.

At the heart of this case is a disagreement over what effect the phrase "but not less than" and the comma preceding that phrase has on Kehoe's ability to recover liquidated damages. Specifically, at issue is whether the clause after the comma is dependent upon the proof of actual damages. The placement of the comma and "but not less than" does not necessarily mean that the second clause is dependent upon proof of the first clause. *Accord Pichler v. UNITE*, 228 F.R.D. 230, 245 (E.D. Pa. 2005) (holding that pursuant to § 2724(b)(1), a plaintiff need

8

not prove actual damages to be awarded liquidated damages).[3] There is no language in sub-section (b)(1) that confines liquidated damages to people who suffered actual damages. For example, if sub-section (b)(1) instead said "liquidated damages in the amount of $2,500, but not less than actual damages," the award of actual damages would not be confined to people who should be awarded liquidated damages.

Moreover, actual damages and liquidated damages are, by definition, completely different types of damages. "Actual damages . . . are defined as '[r]eal, substantive and just damages, or the amount awarded to a complainant in compensation for his actual and real loss or injury." *McMillian v. F.D.I.C.*, 81 F.3d 1041, 1055 (11th Cir. 1996) (quoting BLACK'S LAW DICTIONARY (6th ed. 1991)). We have held that "liquidated damages are a contractual substitute for actual damages [and] are paid even in the absence of proof of actual damages." *Bender Shipbuilding & Repair Co. v. Brasileiro*, 874 F.2d 1551, 1557 n.5 (11th Cir. 1989). "[L]iquidated damages serve a particularly useful function when damages are uncertain in nature or amount or are unmeasurable . . . [a]nd the fact that no damages are shown is not fatal." *Rex Trailer Co. v. United States*, 350 U.S.

---

[3]The *Pichler* decision was issued a few days before we heard oral argument in this case. While we obviously are not bound by the *Pichler* decision, we find its analysis of the issue before us well-reasoned and persuasive.

148, 153, 76 S. Ct. 219, 222 (1956) (internal quotation and citation omitted).

Damages for a violation of an individual's privacy are a quintessential example of

damages that are uncertain and possibly unmeasurable. Since liquidated damages

are an appropriate substitute for the potentially uncertain and unmeasurable actual

damages of a privacy violation, it follows that proof of actual damages is not

necessary for an award of liquidated damages. To us, the plain meaning of the

statute is clear – a plaintiff need not prove actual damages to be awarded liquidated

damages.

      2.    *Doe v. Chao*

The district court spends a large part of its decision discussing the effect of

*Doe v. Chao*, 540 U.S. 614, 124 S. Ct. 1204 (2004) on the remedial provision of

the DPPA. *Doe v. Chao* guides, but does not control, our analysis of the DPPA.

Specifically, we interpret dicta in *Doe v. Chao* as supporting our conclusion that

under the DPPA, proof of actual damages is not a condition precedent to a

liquidated damages award.

In *Doe v. Chao*, the Supreme Court analyzed the remedial provisions of the

Privacy Act of 1974, 5 U.S.C. § 552a (2005) ("Privacy Act"). Pursuant to the

Privacy Act, the Government is liable for "actual damages sustained by the

individual as a result of the refusal or failure, but in no case shall *a person entitled*

10

*to recovery* receive less than the sum of $1,000.00." 5 U.S.C. § 552a(g)(4)(a) (emphasis added). Similar to the issue before us, at issue in *Doe v. Chao*, was whether a plaintiff must prove some measure of actual damages prior to receiving a minimum statutory award of $1,000.00. Ultimately, the Supreme Court held that plaintiffs must prove some measure of actual damages to be awarded $1,000.00 pursuant to the Privacy Act. *See* 540 U.S. at 627, 124 S. Ct. at 1212.[4]

The Supreme Court majority's analysis in *Doe v. Chao* relies heavily on the phrase "a person entitled to recovery" as a critical limiting phrase. *Id.* at 621 n.2, 124 S. Ct. 1209 n.2 ("Congress used the entitled-to-recovery phrase only to describe those entitled to the $1,000 guarantee, and it spoke of entitlement and guarantee only after referring to an individual's actual damages, indicating that 'actual damages' is a further touchstone of the entitlement."). The relevant language of the remedies provision in the DPPA does not contain this critical

_____

[4]The Supreme Court also supported its conclusion in *Doe v. Chao* with the legislative history for the Privacy Act. Kehoe peppers his complaint and brief with quotes from the legislative history of the DPPA. Even if we had concluded § 2724(b)(1) is ambiguous, the legislative history is of no assistance as there is a dearth of legislative history that sheds light on Congress's intent when drafting § 2724(b). Accordingly, we must rely on our own interpretation of the text of the statute. *See Exxon Mobil Corp. v. Allapattah Services, Inc.*, __ U.S. __, 125 S. Ct. 2611, 2626 (2005) ("As we have repeatedly held, the authoritative statement is the statutory text, not the legislative history or any other extrinsic material. Extrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms.").

11

limiting phrase, and, thus, differs significantly from the relevant language of the Privacy Act. Moreover, the remedial provision in the Privacy Act lacks any reference to the term "liquidated damages." For these reasons, the Supreme Court's decision in *Doe v. Chao* does not control our interpretation of the DPPA remedial provision in this case.

Even though *Doe v. Chao* does not control our decision in this case, we are guided by the Supreme Court's dicta in that decision. In *Doe v. Chao*, the Supreme Court suggested language similar to the language in the DPPA as a potential model for a remedial provision in which proof of actual damages is not a prerequisite to recovering statutory damages. *See* 540 U.S. at 623, 124 S. Ct. at 1210. Specifically, the Supreme Court stated that had Congress intended § 552a(g)(4)(a) to be read in the disjunctive, it simply could have provided that "the Government would be liable to the individual for *actual damages 'but in no case . . . less than the sum of $1,000*." *Id*. (emphasis added). Had we any doubt that § 2724(b)(1), as written, is unambiguous, this dicta by the Supreme Court would assuage those doubts. While there are minor differences between this suggested language and the language actually in the DPPA, these differences do not weaken our reliance on this suggested language. The differences are: (1) that Congress used "not" instead of "in no case" in the DPPA; and (2) that Congress specifically called the statutory

12

damages in the DPPA "liquidated damages."  The first difference is immaterial to our analysis, and the second, the use of the term "liquidated damages," strengthens our conclusion because, as stated above, liquidated damages are typically a form of damages separate and distinct from actual damages.[5]  Thus, *Doe v. Chao* lends support to our interpretation that § 2724(b)(1) permits an award of liquidated damages without proof of actual damages.

### 3.    The Rule of the Last Antecedent

The district court erroneously utilizes the rule of the last antecedent to conclude that "the qualifying language of 'but not less than liquidated damages in the amount of $2,500' would apply only to the phrase 'actual damages' immediately preceding it, and would not extend out as its own remedy to be awarded regardless of actual damages." *Kehoe*, 2004 WL 1659617, at *6. According to the rule of the last antecedent, "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Barnhart v. Thomas*, 540 U.S. 20, 26, 124 S. Ct. 376, 380 (2003) (citation omitted), and should not "be construed as extending to and including others more remote." *Paschen*, 296 F.3d at 1209 (citation omitted).  This rule is

---

[5]As stated by the district court in *Pichler*, "Congress's decision to use the technical term 'liquidated damages' in the DPPA suggests that it intended to incorporate the locution's well-understood meaning." *Pichler*, 228 F.R.D. at 244.

13

inapplicable to the remedial provision at issue in this case. BLACK'S LAW DICTIONARY illustrates the appropriate application of this rule by way of the following example: "in the phrase *Texas courts*, *New Mexico courts*, *and New York courts in the federal system*, the words *in the federal system* might be held to modify only *New York courts* and not *Texas courts* or *New Mexico courts*." BLACK'S LAW DICTIONARY 1360 (8th ed. 2004).

Thus, while the rule of the last antecedent may be appropriate for demonstrating that "in the amount of $2,500" modifies "liquidated damages," it does not follow that "but not less than liquidated damages" modifies "actual damages." Nevertheless, even if the rule of the last antecedent did guide our analysis of this issue, "this rule is not an absolute and can assuredly be overcome by other indicia of meaning." *Barnhart*, 540 U.S. at 26, 124 S. Ct. at 380.

### 4. Other Privacy Statutes

The district court uses the disjunctive language in the Electronic Privacy Communications Act ("ECPA"), 18 U.S.C. § 2520, and in 26 U.S.C. § 7431(c), which provides civil remedies for the unauthorized disclosure of tax return information, to illustrate that Congress knows how to draft damages provisions that award liquidated or statutory damages in the absence of any actual damages. After comparing the relevant text of these statutes to the DPPA, the district court

14

concludes: "The DPPA's language does not make the clear distinction between actual damages and statutory damages made by both the ECPA and Section 7431. . . . The unwillingness of Congress to adopt this clear language when drafting the DPPA shows that it did not intend to allow plaintiffs without actual damages to receive the $2,500 liquidated damages award." *Kehoe*, 2004 WL 1659617, at *7. We are not comfortable with this conclusion.

As stated above, when interpreting a statute, we operate under the assumption that Congress says what it means and means what it says. *See Harry*, 291 F.3d at 770. However, this does not mean that it is always appropriate to put any weight on what Congress chooses *not* to say. There may be many ways to verbalize the same point and just because Congress, according to Fidelity, did not employ the clearest language available does not mean that the language chosen should be stripped of its plain meaning.

On appeal, Fidelity cites the text and construction of the remedial provisions of five privacy statutes (including the ECPA) to support its interpretation of the DPPA. These privacy statutes are: 18 U.S.C. § 2710(c)(2)(A) (Video Privacy Protection Act or "VPPA"); 18 U.S.C. §§ 2520(c)(1)(A), (c)(1)(B) & (c)(2)(B) (ECPA); 47 U.S.C. § 551(f)(2)(A) (Cable Communications Policy Act or "CCPA"); 47 U.S.C. § 227(b)(3)(B) (Telephone Consumer Protection Act); and 12

15

U.S.C. § 3417(a)(1) (The Right to Financial Privacy Act).  Of these five privacy

statutes, only two have remedial provisions sufficiently similar to the language in

the DPPA: the VPPA and the CCPA.  While there is no guiding case authority

squarely addressing the relevant similar provision in the VPPA,[6] a district court

previously addressed the relevant provision in the CCPA.  *See Warner v. American

Cablevision of Kansas City*, 699 F. Supp. 851, 858-59 (D. Kan. 1988).  Consistent

with our conclusion in this case, the *Warner* court held that § 551(f)(2)(A) does not

require proof of actual damages as a condition precedent to awarding liquidated

damages.[7]

Having considered the plain text of the DPPA's remedial provision, we

conclude that a plaintiff need not prove actual damages to recover liquidated

damages.  Accordingly, we reverse the district court's order granting summary

---

[6]Kehoe cites *Dirkes v. Borough of Runnemede*, 936 F. Supp. 235, 239 n.4 (D.N.J. 1996) in support of the interpretation that this language does not require proof of actual harm. However, any reference to this issue in *Dirkes* was purely dicta.  Further, any statement that the district court in New Jersey may have made in *Dirkes* has been weakened since the Sixth Circuit recently expressly rejected the *Dirkes* court's reasoning regarding who could be sued under VPPA (the issue in *Dirkes*).  *See Daniel v. Cantrell*, 375 F.3d 377, 383 n.3 (6th Cir. 2004) (stating "[w]e do not know what statute the court in *Dirkes* was reading"), *cert. denied*, 125 S. Ct. 874 (U.S. Jan. 10, 2005).  To date, no court has expressly addressed whether liquidated damages are recoverable under VPPA without showing actual harm.

[7]We would be remiss if we did not point out that there are other statutes in which Congress included similar remedial provisions.  *See* 42 U.S.C. § 2000aa-6(f) (Privacy Protection Act); 47 U.S.C. § 338(i)(7); 50 U.S.C. §§ 1810 & 1828.  We could not locate any guiding case authority interpreting the relevant remedial language of these statutes.

judgment in Fidelity's favor.

B.    Impact of Our Decision

Having concluded that proof of actual damages is not necessary for an award of liquidated damages, we turn to the impact that this conclusion will have on this case and future litigation filed pursuant to the DPPA in this Circuit.  While we have devoted a significant portion of this opinion to the words in sub-section (b)(1), we have not yet touched the four powerful words preceding that sub-section.

Section 2724(b) begins, "[t]he Court *may* award."  18 U.S.C. § 2724(b) (emphasis added).   The use of the word "may" suggests that the award of any damages is permissive and discretionary.  *See DirecTV*, 371 F.3d at 818 (concluding that the district court correctly determined that liquidated damages under the ECPA are discretionary).  "This common-sense principle of statutory construction is by no means invariable, however, and can be defeated by indications of legislative intent to the contrary or obvious inferences from the structure and purpose of the statute."  *Id.* at 817 (quoting *United States v. Rodgers*, 461 U.S. 677, 706, 103 S. Ct. 2132 (1983)).  Since there is neither legislative history nor obvious inferences from the structure that suggests a contrary intent, we conclude that the use of the word "may" implies a degree of discretion.  *See id.*

17

Thus, the district court, in its discretion, may fashion what it deems to be an appropriate award. Among the options for the district court is the option to award "actual damages, but not less than liquidated damages in the amount of $2,500." In fashioning an appropriate award, the district court may also consider the other forms of relief that are available and were requested by Kehoe – punitive damages, reasonable attorney's fees and costs, and the destruction of all of Kehoe's personal information illegally obtained from motor vehicle records.[8]

## IV. CONCLUSION

A plaintiff need not prove actual damages to recover liquidated damages for a violation of the DPPA. Since the district court reached the opposite conclusion, we reverse the district court's order granting summary judgment in favor of

---

[8]Kehoe contends that his general prayer for "such other relief as the Court deems appropriate" in his complaint is sufficient to invoke the district court's equitable jurisdiction to award any appropriate form of injunctive relief. He suggests that this language tracks the language in the DPPA. The relevant language in the DPPA is "such other *preliminary and equitable* relief as the court determines to be appropriate." 18 U.S.C. § 2724(b)(4) (emphasis added). Kehoe's general prayer does not contain "preliminary and equitable." Instead, Kehoe's entire argument seems to rest on the interpretation of a similarly vague general relief clause in *Covad Communications Co. v. Bellsouth Corp.*, 314 F.3d 1282, 1285 n.13 (11th Cir. 2002). Not only is this opinion to which Kehoe cites a dissent from a denial rehearing *en banc*, but the footnote to which Kehoe cites is clearly dicta.

In *Rosen v. Cascade Int'l, Inc.*, we "reject[ed] the [plaintiffs-]appellees' suggestion that they successfully invoked the district court's equitable jurisdiction through their requests for any additional relief as may appear "just and proper" at the conclusion of [the] complaint." 21 F.3d 1520, 1526 n.12 (11th Cir. 1994). "The mere incantation of such boilerplate language does not convert a legal cause of action into a legitimate request for equitable relief." *Id.* Nevertheless, Kehoe did specifically request the destruction of his personal information as a form of injunctive relief. Thus, the district court should address this request for relief on remand.

Fidelity and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**