RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0248P (6th Cir.)
File Name: 00a0248p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

WHEELING-PITTSBURGH
STEEL CORPORATION,
     *Plaintiff-Appellant,*

    *v.*

MITSUI & CO., INC.;
MARUBENI AMERICA
CORPORATION; and ITOCHU
INTERNATIONAL INC.,
     *Defendants-Appellees.*

No. 99-3741

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 98-01122—Edmund A. Sargus, Jr., District Judge.

Argued: April 28, 2000

Decided and Filed: July 25, 2000

Before: KENNEDY, SILER, and BATCHELDER, Circuit
Judges.

_____

## COUNSEL

**ARGUED:** Steven M. Schneebaum, PATTON BOGGS,
Washington, D.C., for Appellant. Christopher Landau,

KIRKLAND & ELLIS, Washington, D.C., for Appellees. **ON BRIEF:** Steven M. Schneebaum, PATTON BOGGS, Washington, D.C., Timothy A. Fry, Percy Squire, BRICKER & ECKLER, Columbus, Ohio, for Appellant. Christopher Landau, Kenneth G. Weigel, Paul F. Brinkman, KIRKLAND & ELLIS, Washington, D.C., Marion H. Little, Jr, Douglas R. Cole, ZEIGER & CARPENTER, Columbus, Ohio, William A. Silverman, Leiv H. Blad, Richard P. Ferrin, ROGERS & WELLS, Washington, D.C., Roger P. Sugarman, KEGLER, BROWN, HILL & RITTER, Columbus, Ohio, Milton R. Wofford, Jr., H. Stephen Harris, Jr., ALSTON & BIRD, Atlanta, Georgia, for Appellees. James A. Donahue, OFFICE OF THE ATTORNEY GENERAL, Harrisburg, Pennsylvania, Mitchell L. Gentile, OFFICE OF THE ATTORNEY GENERAL, CORRECTIONS LITIGATION SECTION, Columbus, Ohio, for Amici Curiae.

---

## OPINION

---

SILER, Circuit Judge. Plaintiff, Wheeling-Pittsburgh Steel Corp. ("Wheeling-Pittsburgh"), filed suit against defendants, Mitsui & Co., Inc., Marubeni America Corp., and Itochu International Inc., under the Antidumping Act of 1916 ("the 1916 Act"), 15 U.S.C. § 72, seeking damages, as well as injunctive relief to enjoin the defendants from importing hot-rolled steel into the United States. In response to a preliminary motion, the district court held that injunctive relief is not available under the 1916 Act, whereupon Wheeling-Pittsburgh filed this interlocutory appeal. We affirm.

### I. BACKGROUND

Wheeling-Pittsburgh, a domestic producer of hot-rolled steel, alleges that the defendants, importers of such steel, are selling hot-rolled steel in Ohio and other states at prices substantially less than the actual market value in violation of

the 1916 Act.[1]    In its amended complaint, Wheeling-Pittsburgh requested treble damages, attorneys' fees and costs. Wheeling-Pittsburgh also sought:

> [P]reliminary and permanent injunctive relief barring defendants from importing, selling or causing to be imported or sold, hot-rolled steel within Ohio and the United States at prices which are substantially less than the actual market value or wholesale price of the hot-rolled steel, at the time of exportation to Ohio and the United States, in the principal markets of the country of their production, or of other foreign countries to which they are commonly exported, after adding to such market value or wholesale price, freight, duty, and other charges and expenses necessarily incident to the importation and sale in Ohio and the United States.

---

[1] Passed as a small part of the Revenue Act, ch. 463, 39 Stat. 798 (1916), the 1916 Act was intended to discourage unfair predatory practices by foreign competitors. The 1916 Act states:

> It shall be unlawful for any person importing or assisting in importing any articles from any foreign country into the United States, commonly and systematically to import, sell or cause to be imported or sold such articles within the United States at a price substantially less than the actual market value or wholesale price of such articles, at the time of exportation to the United States, in the principal markets of the country of their production, or of other foreign countries to which they are commonly exported after adding to such market value or wholesale price, freight, duty, and other charges and expenses necessarily incident to the importation and sale thereof in the United States: Provided, That such act or acts be done with the intent of destroying or injuring an industry in the United States, or of preventing the establishment of an industry in the United States, or of restraining or monopolizing any part of trade and commerce in such articles in the United States....

15 U.S.C. § 72. Wheeling-Pittsburgh also brought state claims against the defendants for unfair methods of competition and tortious interference with business relationships.

Defendants moved to strike Wheeling-Pittsburgh's demand for injunctive relief and Wheeling-Pittsburgh moved for a preliminary injunction pending a final trial on the merits of the action. In light of the comprehensive administrative scheme enacted by Congress to regulate international trade and illegal dumping, and because the statute itself only provides for treble damages, attorneys' fees and costs, the district court held that it was not authorized to grant injunctive relief under the 1916 Act. Wheeling-Pittsburgh's motion for a preliminary injunction was subsequently denied and the defendants motion to strike was granted. Wheeling-Pittsburgh filed this instant appeal pursuant to 28 U.S.C. § 1292(a)(1).

## II. STANDARD OF REVIEW

The availability of injunctive relief under the Act of 1916 is a legal question which must be reviewed de novo. *See In re Baker & Getty Fin. Servs., Inc.*, 954 F.2d 1169 (6th Cir. 1992).

## III. DISCUSSION

The 1916 Act provides in relevant part that "[a]ny person injured in his business or property by reason of any violation of, or combination or conspiracy to violate, this section, may sue therefor in the district court of the United States for the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and *shall recover threefold the damages sustained, and the cost of the suit, including a reasonable attorney's fee*." 15 U.S.C. § 72 (emphasis added). Although the statute does not expressly provide for injunctive relief, Wheeling-Pittsburgh urges this court to use its inherent equitable powers to find that courts may enjoin foreign competitors from illegally dumping products into the United States. *See Porter v. Warner Co.*, 328 U.S. 395, 398 (1946)("Unless otherwise provided by statute, all the inherent equitable powers of the District Court are available" to grant injunctive relief); *Califano v.*

treble damages, attorneys' fees and costs. Federal courts lack authority to enjoin conduct that violates or may violate the 1916 Act.

AFFIRMED.

not authorized to restrict importation of dumped goods, the President may impose an import ban under the International Emergency Economic Powers Act. *See* 50 U.S.C. § 1701(a)(President authorized "to deal with any unusual and extraordinary threat, which has its source in whole or substantial part outside the United States, to the national security, foreign policy, or economy of the United States, if the President declares a national emergency with respect to such threat."). If injunctive relief was included under the 1916 Act, investigations by the DOC and ITC of alleged illegal dumping practices might not only be impeded, but it is possible that such relief may conflict with the President's power to deal with foreign affairs. Furthermore, there would be no practical way to enforce multiple injunctions banning the importation of foreign goods if each of the ninety-four district courts had the authority to issue such injunctions. We also take note that the World Trade Organization ("WTO") has just recently ruled in two separate decisions that the 1916 Act violates various sections of several international agreements, including the General Agreement on Tariffs and Trade ("GATT"), which generally prohibits bans on imports. *See* Michael M. Phillips, *Japanese Steelmakers Win Victory Against Anti-Dumping Act of 1916*, The Asian Wall Street Journal, June 8, 2000, *available in* 2000 WL-WSJA 2941139.[4] While GATT "does not trump domestic legislation," Congress has an "interest in complying with U.S. responsibilities under the GATT." *Suramerica v. United States*, 966 F.2d 660, 667-68 (Fed. Cir. 1992).

Therefore, parties allegedly injured under the 1916 Act are limited to the remedies expressly provided for in the statute--

---

an action in the United States Court of International Trade, and further appeal to the United States Court of Appeals for the Federal Circuit. 19 U.S.C. 1516a; 28 U.S.C. §§ 1581, 1295.

[4] The WTO has requested that the 1916 Act be revoked or amended so that the United States will be in compliance with its obligations with the WTO. *Id.*

*Yamasaki*, 442 U.S. 682, 705 (1979)("Absent the clearest command to the contrary from Congress, federal courts retain their equitable power to issue injunctions in suits over which they have jurisdiction.").

Whether a district court may grant injunctive relief under the 1916 Act is not only an issue of first impression for this court, but is apparently also an issue of first impression in any jurisdiction. In the eighty-four years since its enactment, no published case indicates another court has ever entertained a request for injunctive relief, nor have many actions been brought pursuant to the 1916 Act. *See Geneva Steel Co. v. Ranger Steel Supply Corp.*, 980 F.Supp. 1209, 1214 (D. Utah 1997)(less than twenty civil actions reported filed under the 1916 Act).

We begin our analysis then by looking at the language of the statute, which provides only for treble damages, attorneys' fees and costs. Generally, when Congress sets forth specific remedies in a statute, those remedies are exclusive.

A frequently stated principle of statutory construction is that when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the state to subsume other remedies. "When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode."

*National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers*, 414 U.S. 453, 458 (1974)(quoting *Botonay Worsted Mills v. United States*, 278 U.S. 282, 289 (1929)). *See Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979)("[W]here a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it."). However, this canon of statutory construction must give way to evidence of "a contrary legislative intent." *Transamerica Mortgage*, 444 U.S. at 457. Though the defendants cite several cases in which courts have held injunctive relief is unavailable because of Congress'

lack of contrary intent, those cases differ in that the courts were able to look to the statutes' legislative histories for guidance.[2]   Unfortunately, in our case there is no helpful legislative history to direct this court in determining whether the 1916 Act authorizes private injunctive relief. *See Geneva Steel*, 980 F.Supp. at 1212; Joseph Gregory Sidak, *A Framework for Administering the 1916 Anti-Dumping Act: Lessons From Anti-Trust Economics*, 18 Stan. J. Int'l L. 377, 381 (1982) (legislative history "largely uninformative"). Nevertheless, despite the lack of legislative history and cases on point, we find that when Congress provided for specific legal relief under the 1916 Act, it implied that other relief would not be appropriate.

First, although federal courts do possess an inherent equitable power to grant injunctive relief, such relief "'depend[s] on traditional principles of equity jurisdiction.'" *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 318 (1999)(quoting 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2941, at 31 (2d ed. 1995)).    "[E]quity jurisdiction of the federal courts is the jurisdiction in equity exercised by the High Court of Chancery in England at the time of the adoption of the Constitution and the enactment of the original Judiciary Act, 1789 (1 Stat. 73)." *Id.* (internal

---

[2] In *Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1076 (9th Cir. 1986), the court was faced with determining whether injunctive relief was available to private parties under the civil Racketeer Influence and Corrupt Organization Act, 18 U.S.C. § 1964 ("RICO").   Like the 1916 Act, only treble damages, attorneys' fees and costs are afforded to private parties under RICO. 18 U.S.C. § 1964(c). After examining its extensive legislative history which indicated a "strong…congressional intent against any implied injunctive relief remedy," as well as the plain language of the statute, the court concluded "no private equitable action should be implied under civil RICO." *Id.* at 1088.   *See also Colorado v. Idarado Mining Co.,* 916 F.2d 1486 (10th Cir. 1991)(injunctive relief unavailable under Comprehensive Environmental Response, Compensation and Liability Act (CERCLA)); *Cadillac-Fairview/California, Inc. v. Dow Chemical Co.*, 840 F.2d 691 (9th Cir. 1988)(same).

quotation marks and citation omitted). In the instant case, Wheeling-Pittsburgh seeks to enjoin the importation of foreign goods into the United States. We are unable to find, however, any evidence to suggest that this type of relief was "traditionally accorded by courts of equity";  hence, we are under no obligation to exercise our inherent equitable powers to grant Wheeling-Pittsburgh injunctive relief under the 1916 Act. *Id.*

Second, we must interpret the 1916 Act in conjunction with all subsequent antidumping legislation, in particular Title VII of the Tariff Act of 1930, 19 U.S.C. § 1671, *et seq.* ("Title VII"), which addresses unfair dumping practices. *See Jones v. St. Louis-San Francisco Ry. Co.*, 728 F.2d 257, 262 (6th Cir. 1984)("[W]e are mindful that where two or more statutes deal with the same subject, they are to be read *in pari materia* and harmonized, if possible."). Under Title VII, Congress set up a comprehensive administrative scheme in which the Department of Commerce ("DOC") and the United States International Trade Commission ("ITC") have been authorized to investigate alleged dumping practices and impose tariffs to offset unlawful price differences. *See* 19 U.S.C. §§ 1671a, 1673.[3]  Though the DOC and the ITC are

---

[3] An American industry allegedly injured by the dumping of foreign goods may file a petition with the ITC and DOC, whereupon the ITC will make a preliminary determination whether the industry has been "materially injured,…threatened with material injury, or the establishment of an industry in the United States is materially retarded." 19 U.S.C. § 1673b(a). If the ITC makes such a determination, then the DOC will make its own preliminary, and then final, determination "whether there is a reasonable basis to believe or suspect that the merchandise is being sold, or is likely to be sold, at less than fair value." 19 U.S.C. §§ 1973b(b)(1)(A), 1973d(a)(1). *See* 19 U.S.C. §§ 1677a, 1677b (how to determine whether merchandise is being, or likely to be, sold at less than fair market value). If the ITC subsequently makes a final determination that the American industry has, or is threatened with, material injury, or is materially retarded by the dumping of foreign goods, *see* 19 U.S.C. 1673d(b)(1), then an antidumping duty will be imposed on the foreign merchandise being sold in the United States. 19 U.S.C. § 1673.   Any interested party may seek review of the ITC's decision by commencing