Ramon N. RIOS, Jr, and Winford Melvin, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

DIRECT MAIL EXPRESS, INC., A Florida corporation, Defendant.

Nos. 05–61689–CIV, 05–61689–CIV.

United States District Court, S.D. Florida, Miami Division.

May 23, 2006.

Mark S. Fistos, James Hoyer Newcomer Smiljanich, Tallahassee, FL, James Kellogg Green, West Palm Beach, FL, John

Allen Yanchunis, Sr., James Hoyer Newcomber Smiljamich, Tampa, FL, Peter A. Portley, Portley & Sullivan, Lighthouse Point, FL, Steven R. Jaffe, David Dickey Welch, Welch Finkel & Schuyler, Pompano Beach, FL, Lawrence Dean Goodman, Devine Goodman Pallot & Wells, Tod N. Aronovitz, Aronovitz Trial Lawyers, Anthony Sanchez, Miami, FL, for Plaintiffs.

Laurence Stephan Litow, Hinshaw & Culbertson, LLP, Fort Lauderdale, FL, for Defendant.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT

COOKE, District Judge.

THIS CAUSE is before the Court upon Defendant's Motion to Dismiss Amended Class Action Complaint (DE 9), filed December 15, 2005. Plaintiffs filed their response on December 29, 2005. Defendant filed its reply on January 26, 2006. The Court having reviewed the Motions and being otherwise fully advised finds, for the reasons set forth below, that Defendant's Motion to Dismiss Class Action Complaint should be denied.

### I. BACKGROUND

The Plaintiffs instituted this action on October 20, 2005. The Plaintiffs allege that, at all times material to this action, they have had motor vehicles registered with the Florida Department of Highway Safety and Motor Vehicles ("DHSMV"). Amended Compl. at ¶ 3. The Plaintiffs aver that Defendant Direct Mail Express, Inc. ("DME") is a direct marketing company based in Daytona Beach, Florida. *Id.* at ¶ 4. Plaintiffs allege that, in 2001, DME bought more than 600,000 motor vehicle records (which included names, addresses, drivers' license numbers and vehicle identification numbers) from the Florida DHSMV. *Id.* at ¶ 17. Further, Plaintiffs allege that DME knowingly obtained, used or disclosed these motor vehicle records for marketing and other purposes in violation of the Driver's Privacy Protection Act ("DPPA").[1] *Id.* at ¶¶ 18–20. Additionally, Plaintiffs allege that DME has not taken steps to remedy or end the continued use and disclosure of personal information it allegedly obtain from the Florida DHSMV. *Id.* at ¶ 21. Finally, Plaintiffs request damages, injunctive relief, attorney fees, and costs on behalf of themselves and others similarly situated.

### II. PROCEDURAL HISTORY

DME filed its Motion to Dismiss Amended Class Action Complaint on December 15, 2005. Plaintiffs filed their response on December 29, 2005. Thereafter, the Defendant filed its reply on January 26, 2006. Thus, Defendant's Motion to

---

1. "In 1994, Congress enacted the DPPA to limit the release of an individual's personal information contained in his driver's license record to those who had a legitimate and lawful need for the information. Originally, the DPPA implemented an opt-out procedure for driver's license information disclosed for marketing purposes. Under the opt-out procedure, a state could release or sell an individual's driver's license information without the individual's permission so long as the individual was given an opportunity to opt out by requesting that the information not be released. On October 9, 1999, Congress amended the DPPA to require an opt-in procedure. The effective date of this amendment was June 1, 2000. As a result of this amendment, a state's department of motor vehicles cannot disclose an individual's driver's license information without express permission from the individual about whom the information pertains. Forty-nine states immediately passed legislation to ensure compliance with this amendment to the DPPA. Florida was the only state that did not immediately comply. Instead, Florida waited until May 13, 2004, to amend its public records statute to comply with the DPPA." *Kehoe v. Fidelity Federal Bank & Trust,* 421 F.3d 1209, 1210 (11th Cir.2005).

Dismiss Amended Class Action Complaint is ripe for adjudication.

### III. MOTION TO DISMISS STANDARD

"[W]hen considering a motion to dismiss, the court must accept all allegations of fact as true and should only dismiss when it appears to a certainty that the plaintiff would not be entitled to relief under any state of facts which could be proven in support of his claim." *Solis–Ramirez v. U.S. Dept. of Justice,* 758 F.2d 1426, 1429 (11th Cir.1985) (*citing Holt Civic Club v. City of Tuscaloosa,* 439 U.S. 60, 65–66, 99 S.Ct. 383, 58 L.Ed.2d 292 (1978)). *See Duke v. Cleland,* 5 F.3d 1399, 1402 (11th Cir.1993). A court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action. *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir.1993). However, "the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47–48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### IV. ANALYSIS

DME contends that the Amended Complaint should be dismissed because: 1) Plaintiffs failed to allege that DME knowingly violated the DPPA; 2) DME should be immune from suit as a matter of law because a private party that attempts to secure information in good faith under a presumptively valid state law should not be held liable for civil monetary damages; 3) Plaintiffs did not allege that DME knowingly violated the DPPA; 4) the DPPA does not preempt Florida law; and 5) the DPPA is unconstitutional pursuant to the Tenth Amendment. The Court will now address each of these contentions.

### A. PLAINTIFFS SUFFICIENTLY ALLEGED THAT DME KNOWINGLY VIOLATED THE DPPA

■ DME contends that the Amended Complaint should be dismissed because the Plaintiffs did not allege that DME knowingly violated the DPPA. In relevant part, § 2722(a) of the DPPA states: "It shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title." 18 U.S.C. § 2722(a). Section 2724(a) of the DPPA establishes a civil cause of action for violation of the DPPA. Section 2724(a) states "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court." 18 U.S.C. § 2724(a). Thus, to state a claim under the DPPA the plaintiff must allege that the defendant knowingly obtained, disclosed, or used personal information in a manner not permitted under the Act.

In the present action, the Amended Complaint is replete with allegations that DME knowingly obtained and used Plaintiffs' personal information in violation of the DPPA. *See* Amended Compl. at ¶¶ 26, 27, 29, 31, 32, 35, 44, and 46. For instance, in Paragraph 26 of the Amended Complaint, the Plaintiffs allege "[b]ased on the foregoing, and upon information and belief, DME has knowingly obtained, disclosed or used personal information pertaining to Plaintiffs for a purpose not permitted by the DPPA ..." *Id.* at ¶ 26. Therefore, the Court finds that the Plaintiffs have suffi-

ciently alleged that DME knowingly obtained, disclosed, or used personal information in violation of the DPPA.

### B. *IMMUNITY AND GOOD FAITH RELIANCE DO NOT BAR SUIT UNDER THE DPPA*

■ Next, DME contends that to state a claim under the DPPA the Plaintiffs must allege that DME knowingly violated the DPPA, however, the Plaintiffs are unable to do so because DME was entitled to rely on the Florida DHSMV to act in accordance with the law. Mot. at 7–10. Specifically, DME states that "[b]y reading the DPPA in conjunction with both Florida's constitutionally mandated public records provision and the Florida Public Records law pertaining to DHSMV motor vehicle records, it becomes clear that the DHSMV bears the responsibility not to disclose 'personal information' that it maintains." Mot. at 8. Thus, DME appears to contend it was entitled to rely upon the Florida DHSMV to act in accordance with the DPPA and therefore, DME should be immune from suit for violations of the DPPA as that information was disclosed under the color of legitimate state action pursuant to Florida law. To support this contention, DME relies upon Article I, § 24 of the Florida Constitution and the 2001 version of Florida Statute § 119.07(3)(bb).

In relevant part Article I, § 24(a) of the Florida Constitution states "[e]very person has the right to inspect or copy any public record made or received in connection with the official business of any public body, officer, or employee of the state, or persons acting on their behalf, except with respect to records exempted pursuant to this section or specifically made confidential by this Constitution. This section specifically includes the legislative, executive, and judicial branches of government and each agency or department cre-

ated thereunder; counties, municipalities, and districts; and each constitutional officer, board, and commission, or entity created pursuant to law or this Constitution." FLA. CONST. art. I, § 24(a). Thus, the Florida Constitution creates a right of access to public records unless the records in question have been specifically exempted or made confidential. In relevant part, the 2001 version of Florida Statute § 119.07(3)(bb) stated "[u]pon a request made in a form designated by the Department of Highway Safety and Motor Vehicles, personal information contained in a motor vehicle record that identifies the requester is exempt from subsection (1) and s. 24(a), Art. I of the State Constitution except as provided in this paragraph." FLA. STAT. § 119.07(3)(bb) (2001).[2] Therefore, the 2001 version of Florida Statute § 119.07(3)(bb) created an exemption to Article I, § 24 of the Florida Constitution by which a motor vehicle registrant could opt to have their motor vehicles records exempted from public disclosure under Article I, § 24 of the Florida Constitution. However, pursuant to the 2001 version of § 119.07(3)(bb), in the absence of an opt-out request motor vehicle records could be disclosed freely.

■ Again, DME relies upon these enactments to contend that Florida law in effect at the time of the alleged violations did not require express consent in order for the Florida DHSMV to disclose its public records, therefore, DME should be immune as a matter of law because it acted in good faith under a presumptively valid state law. At the outset, the Court notes that the immunity defense is generally reserved for public officials sued in their individual capacities or private actors performing a public function. *See e.g. Wyatt v. Cole,* 504 U.S. 158, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992) (finding qual-

---

**2.** *See infra* Note 1.

ified immunity was not available to private defendants faced with § 1983 liability for invoking state replevin, garnishment, or attachment statutes); *Burrell v. Bd. of Trustees of Georgia Military College,* 970 F.2d 785, 796 (11th Cir.1992) (stating "[a]t any rate, if qualified immunity is not available to private citizens who rely unsuspectingly on state laws they did not create and may have no reason to believe are invalid, it surely does not protect those who are alleged to have acted in concert with public officials for the sole purpose of violating another's constitutional rights.") (*citing Wyatt,* 504 U.S. 158, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992)).

Further, the express unambiguous language of the DPPA does not create a good faith defense or bestow immunity upon those who rely upon state agencies to act in compliance with its terms. *See* 18 U.S.C. §§ 2721–25. *See also Howlett v. Rose,* 496 U.S. 356, 375, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990) ("[t]he elements of, and the defenses to, a federal cause of action are defined by federal law."). Additionally, DME did not direct this Court to any caselaw or other authority where the DPPA has been interpreted to contain such defenses or bars to suit. *See* Mot. Instead, DME relies upon a string of cases which are not applicable to the present action. *See e.g. U.S. v. Leon,* 468 U.S. 897, 915, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) ("the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion."); *Bartnicki v. Vopper,* 532 U.S. 514, 121 S.Ct. 1753, 149 L.Ed.2d 787, (2001) ("[w]e think it clear that parallel reasoning requires the conclusion that a stranger's illegal conduct does not suffice to remove the First Amendment shield from speech about a matter of public concern."); *Woodard v. Sunbeam Television Corp.,* 616 So.2d 501, (Fla.Dist.Ct.App.1993) (news media was not under a duty to determine the accuracy of information contained in Florida Department of Law Enforcement records before broadcasting a report). These cases are not applicable to the present action because they do not involve interpretations of the DPPA and they do not involve situations where a party asserted immunity or good faith reliance on the grounds that an Act of Congress conflicted with state law. Additionally, the issues involved in these cases (such as the exclusionary rule and the contours of the First Amendment) are not analogous to the present action. Finally, these cases do not hold or suggest that this Court is free to infer or create statutory defenses and or bars to suit that are not contained within the express language of a Congressional statute. *See Howlett,* 496 U.S. at 375, 110 S.Ct. 2430 (1990). Therefore, the Court finds these cases to be inapplicable to the present action.

Nevertheless, DME requests that this Court infer that immunity and good faith reliance bar suit under the DPPA because the Act is a species of tort liability. Mot. At 9. The Court must stress that if Congress had intended for such defenses to be applicable to actions under the DPPA then it could have inserted language reflecting such a decision. However, Congress chose not to do so. Further, in the absence of such direction from Congress this Court is unwilling to infer such defenses and bars to suit under the DPPA. Therefore, this Court finds that immunity and or good faith reliance do not serve as a bar to the present action.

C. *THE DPPA DOES NOT REQUIRE THE PLAINTIFFS TO PLEAD THAT DME HAD KNOWLEDGE THAT IT WAS ACTING IN A MANNER NOT PERMITTED UNDER THE DPPA*

Next, DME contends that in order for it to be liable under the DPPA Plain-

tiffs must allege that DME knew that it was acting in a manner not permitted under the DPPA. However, this argument conflicts with the express unambiguous language of the DPPA. The DPPA states "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court." 18 U.S.C. § 2724(a). Thus, under the express language of the DPPA the term "knowingly" only modifies the phrase "obtains, discloses, or uses personal information." It does not modify the phrase "for a purpose not permitted under this Chapter." *See Pichler v. UNITE*, 228 F.R.D. 230, 241–42 (E.D.Pa.2005) (thoroughly analyzing the DPPA and finding that the term "knowingly" did not modify the phrase "for a purpose not permitted under this Chapter."). Therefore, the Court finds that the Plaintiffs are not required to plead or prove that DME knew that it was acting in a manner not permitted under the DPPA.

### D. *The DPPA Preempts Florida Law And Does Not Violate The Tenth Amendment*

 Finally, DME argues that the DPPA did not preempt the Florida Constitution and the Florida public records statute in effect at the time of the alleged violations. Specifically, DME contends that Article I, § 24 of the Florida Constitution requiring disclosure and access to public records was established prior to the enactment of the DPPA, thus, to the extent that Congress attempted to regulate the disclosure of Florida's public records it did so after DME's right to access was already guaranteed under the Florida Constitution. Moreover, DME contends that in order to comply with the DPPA's opt-in provisions the Florida Legislature would have been forced to enact legislation to limit the reach of Article I, § 24 of the Florida Constitution, which is unconstitutional pursuant to the Tenth Amendment. Mot. at 13–15.

The U.S. Supreme Court resolved these issues in *Reno v. Condon* 528 U.S. 141, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000), in which the court analyzed the constitutionality of the DPPA in light of a conflicting South Carolina state statute. Prior to the enactment of the DPPA, South Carolina law allowed information contained in the state's department of motor vehicle records to be available to any person or entity that filled out a form listing the requester's name and address and stating that the information would not be used for telephone solicitation. After the DPPA's enactment, South Carolina filed suit challenging the constitutionality of the DPPA. Specifically, South Carolina argued that the DPPA violated the Tenth and Eleventh Amendments because it placed the burden of administering the Act upon the states. *Id.* at 149–150, 120 S.Ct. 666. However, the U.S. Supreme Court held that the DPPA was a proper exercise of Congress' authority to regulate interstate commerce under the Commerce Clause. *Id.* at 148, 120 S.Ct. 666. Further, the court found that the DPPA did not violate the Tenth and Eleventh Amendments because it did not require states in their sovereign capacity to regulate their own citizens, but instead, regulated the states as the owners of databases. *Id.* at 150–151, 120 S.Ct. 666. Thus, the court found that the DPPA did not commandeer state legislatures and as such was not unconstitutional under the Tenth and Eleventh Amendments.

DME attempts to escape the *Reno* holdings by arguing that *Reno* involved a state statute rather than a provision of a state

constitution. But this distinction is irrelevant. First, the U.S. Supreme Court did not provide any indication that its holding was based upon or limited to the fact that the state enactment at issue was a statute rather than a constitutional provision. *See id.* Secondly, a key component of the *Reno* holding was the court's finding that the DPPA regulates the states as the owners of databases but does not require the states to regulate their own citizens. Moreover, in response to South Carolina's contention that compliance with the DPPA would require state legislative action, the court stated "[a]ny federal regulation demands compliance. That a State wishing to engage in certain activity must take administrative and sometimes legislative action to comply with federal standards regulating that activity is a commonplace that presents no constitutional defect." *Id.* at 150–151, 120 S.Ct. 666 (*quoting South Carolina v. Baker,* 485 U.S. 505, 514–515, 108 S.Ct. 1355, 99 L.Ed.2d 592 (1988)). Therefore, the Court finds DME's arguments concerning preemption and the constitutionality of the DPPA to be unavailing.

Accordingly, it is hereby

ORDERED AND ADJUDGED that Defendant's Motion to Dismiss Amended Class Action Complaint is DENIED.