In the

# United States Court of Appeals
## For the Seventh Circuit

No. 12-8002

KEVIN STERK and JIAH CHUNG,
   on behalf of themselves and
   others similarly situated,

*Plaintiffs-Respondents*,

*v.*

REDBOX AUTOMATED RETAIL, LLC,

*Defendant-Petitioner.*

Petition for Permission to Appeal from the
United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 C 1729—**Matthew F. Kennelly**, *Judge*.

SUBMITTED JANUARY 24, 2012—DECIDED MARCH 6, 2012

Before POSNER, ROVNER, and SYKES, *Circuit Judges*.

POSNER, *Circuit Judge*.  Redbox, a company that special-izes in renting DVDs, Blu-ray Discs, and video games to consumers from automated retail kiosks and is the defendant in this class action suit under the Video Privacy Protection Act, 18 U.S.C. § 2710, asks us to allow

it to take an interlocutory appeal under 28 U.S.C. § 1292(b). The issue it wants to appeal is whether subsection (e) of the Act can be enforced by a damages suit under subsection (c). The district judge held that it can be; Redbox asks us to rule that it cannot be.

Interlocutory appeals are frowned on in the federal judicial system. They interrupt litigation and by interrupting delay its conclusion; and often the issue presented by such an appeal would have become academic by the end of the litigation in the district court, making an interlocutory appeal a gratuitous burden on the court of appeals and the parties, as well as a gratuitous interruption and retardant of the district court proceedings. But there are a number of exceptions to the final-judgment rule, among them 28 U.S.C. § 1292(b), which allows the court of appeals in its discretion to hear an interlocutory appeal if the district court certifies that the appeal presents "a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." There is no doubt that the appeal that Redbox wants us to hear involves "a controlling question of law as to which there is substantial ground for difference of opinion." But the plaintiffs argue that answering that question will not "materially advance the ultimate termination of the litigation" because they have pleaded another ground for relief—that Redbox violated subsection (b)(1), which forbids a "video tape service provider" to "knowingly disclose[], to any person, personally identifiable information concerning any consumer of such provider."

But all that section 1292(b) requires as a precondition to an interlocutory appeal, once it is determined that the appeal presents a controlling question of law on which there is a substantial ground for a difference of opinion, is that an immediate appeal *may* materially advance the ultimate termination of the litigation. This appeal is almost certain to do so. The plaintiffs' original complaint was limited to the destruction subsection, (e), and thus did not allege a violation of the disclosure subsection, (b)(1), which first appeared in the amended complaint, filed after Redbox moved to dismiss the destruction claim. If the appeal is not allowed, and the suit proceeds in the district court on both the disclosure and destruction claims, the completion of the litigation will take longer than if the destruction claim is out of the case, especially since that claim appears to be the plaintiffs' main one, with the disclosure claim perhaps just a life jacket. Moreover, uncertainty about the status of the destruction claim may delay settlement (almost all class actions are settled rather than tried), and by doing so further protract the litigation. That is enough to satisfy the "may materially advance" clause of section 1292(b); neither the statutory language nor the case law requires that if the interlocutory appeal should be decided in favor of the appellant the litigation will end then and there, with no further proceedings in the district court. *McFarlin v. Conseco Services, LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004); *In re Baker & Getty Financial Services, Inc.*, 954 F.2d 1169, 1172 and n. 8 (6th Cir. 1992); compare *White v. Nix*, 43 F.3d 374, 378-79 (8th Cir. 1994).

So we accept the appeal and move to the merits, which, having been adequately briefed in the petition for permission to appeal and the plaintiffs' response to the petition, we can decide without additional briefing.

We will have to quote a good deal of the Video Privacy Protection Act in order to explain and resolve the issue that the appeal presents:

> **18 U.S.C. § 2710. Wrongful Disclosure of Video Tape Rental or Sale Records**:
>
> (a) **Definitions**.—For purposes of this section—
>
> (1) the term "consumer" means any renter, purchaser, or subscriber of goods or services from a video tape service provider . . .;
>
> (3) the term "personally identifiable information" includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider; and
>
> (4) the term "video tape service provider" means any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials, or any person or other entity to whom a disclosure is made under subparagraph (D) or (E) of subsection (b)(2), but only with respect to the information contained in the disclosure.
>
> (b) **Video tape rental and sale records**.—
>
> (1) A video tape service provider who knowingly discloses, to any person, personally identifiable infor-

mation concerning any consumer of such provider shall be liable to the aggrieved person for the relief provided in subsection [(c)]. [The statute says (d), but this must be an error, not only because the only "relief" provided there is exclusion of the personally identifiable information from evidence, but also because it is very unlikely that a video tape service provider would ever be submitting, as evidence in a legal proceeding, personally identifiable information that the provider had disclosed.]

(2) A video tape service provider may disclose personally identifiable information concerning any consumer— . . .

(F) pursuant to a court order, in a civil proceeding upon a showing of compelling need for the information that cannot be accommodated by any other means . . . .

(c) **Civil action**.—

(1) Any person aggrieved by any act of a person in violation of this section may bring a civil action in a United States district court.

(2) The court may award—

(A) actual damages but not less than liquidated damages in an amount of $2,500;

(B) punitive damages;

(C) reasonable attorneys' fees and other litigation costs reasonably incurred; and

(D) such other preliminary and equitable relief as the court determines to be appropriate . . . .

(d) **Personally identifiable information**.—

Personally identifiable information obtained in any manner other than as provided in this section shall not be received in evidence in any trial, hearing, arbitration, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision of a State.

(e) **Destruction of old records**.—

A person subject to this section shall destroy personally identifiable information as soon as practicable, but no later than one year from the date the information is no longer necessary for the purpose for which it was collected and there are no pending requests or orders for access to such information under subsection (b)(2) or (c)(2) or pursuant to a court order . . . .

The statute is not well drafted, even after the error in section (b)(1) is corrected. The biggest interpretive problem is created by the statute's failure to specify the scope of subsection (c), which creates the right of action on which this lawsuit is based. If (c) appeared after all the prohibitions, which is to say after (d) and (e) as well as (b), the natural inference would be that any violator of any of the prohibitions could be sued for damages. But instead (c) appears after just the first prohibition, the one in subsection (b), prohibiting disclosure. This placement could be an accident, but we agree with the only reported appellate case to address the issue, *Daniel v. Cantrell*, 375 F.3d 377, 384-85 (6th Cir. 2004),

that it is not; that the more plausible interpretation is that it is limited to enforcing the prohibition of disclosure. For one thing, the disclosure provision, but not the others, states that a "video tape service provider who knowingly discloses, to any person, personally identifiable information . . . shall be liable to the aggrieved person for the relief provided in subsection [c]," which includes damages. And for another thing, it would be odd to create a damages remedy for "receiv[ing]" information in evidence in an official proceeding; that would make a judge who admitted evidence in violation of subsection (d) liable in damages, erasing the absolute immunity from suit for acts taken in a judge's judicial capacity.

Nor would it make a lot of sense to award damages for a violation of the requirement of timely destruction of personally identifiable information, in subsection (e)—the specific issue presented by this appeal. How could there be injury, unless the information, not having been destroyed, were disclosed? If, though not timely destroyed, it remained secreted in the video service provider's files until it was destroyed, there would be no injury. True, subsection (c)(2)(A) allows $2,500 in "liquidated damages," without need to prove "actual damages," but liquidated damages are intended to be an estimate of actual damages, *Pace Communications, Inc. v. Moonlight Design, Inc.*, 31 F.3d 587, 593 (7th Cir. 1994), and if failure of timely destruction results in no injury at all because there is never any disclosure, the only possible estimate of actual damages for violating subsection (e) would be zero. In interpreting a statute even less indicative that an

actual injury must be proved to entitle the plaintiff to statutory damages (the statute read "actual damages sustained by the individual as a result of the refusal or failure [of a federal agency to comply with the Privacy Act], but in no case shall a person entitled to recovery receive less than the sum of $1,000," 5 U.S.C. § 552a(g)(4)(A)), the Supreme Court held that the plaintiff could not obtain statutory damages without proof of an actual injury. *Doe v. Chao*, 540 U.S. 614 (2004); see also *Van Alstyne v. Electronic Scriptorium, Ltd.*, 560 F.3d 199, 205–06 (4th Cir. 2009) (Stored Communications Act).

It is true that two court of appeals decisions involving language, identical to that in this case, in the Driver's Privacy Protection Act, 18 U.S.C. §§ 2721 *et seq.*, a parallel statute to the Video Privacy Protection Act, distinguish *Doe v. Chao* and hold that injury need not be proved to entitle the plaintiff who proves a violation of the statute to the statutory liquidated damages. *Pichler v. UNITE*, 542 F.3d 380, 398-400 (3d Cir. 2008); *Kehoe v. Fidelity Federal Bank & Trust*, 421 F.3d 1209, 1212-16 (11th Cir. 2005). We need not decide whether the efforts of those courts to distinguish *Doe v. Chao* are successful. In both *Pichler* and *Kehoe* there was an unlawful appropriation of private personal information, and as the courts pointed out this is a perceived although not a quantifiable injury. See 542 F.3d at 398-99; 421 F.3d at 1213. It corresponds to disclosure of personal information in violation of subsection (b) of the Video Privacy Protection Act. But a violation of (e) is the failure to destroy private information even if lawfully obtained and not disclosed. The injury inflicted by such a failure is enormously at-

tenuated, and it would be no surprise if Congress had decided—as the placement of the damages section suggests—not to provide a damages remedy, let alone a damages remedy requiring no proof of injury.

This analysis of the unsuitability of subsections (d) and (e) to be predicates for awards of damages lends meaning and significance to the portion of (b)(1) that makes the "video tape service provider who knowingly *discloses*, to any person, personally identifiable information . . . liable to the aggrieved person for the relief provided in subsection [(c)]" (emphasis added)—relief that includes damages. Unlawful disclosure is the only misconduct listed in the statute for which an award of damages is an appropriate remedy, so it makes sense for the damages section to be sited between the disclosure prohibition and the other prohibitions; it belongs with the former.

It is true that subsection (c) authorizes other relief besides just damages, relief less obviously inappropriate to a violation of (d). That is particularly true of equitable relief, authorized in subsection (c)(2)(D). But when all that a plaintiff seeks is to enjoin an unlawful act, there is no need for express statutory authorization; "absent the clearest command to the contrary from Congress, federal courts retain their equitable power to issue injunctions in suits over which they have jurisdiction." *Califano v. Yamasaki*, 442 U.S. 682, 705 (1979); see also *Plata v. Schwarzenegger*, 603 F.3d 1088, 1094 (9th Cir. 2010); *Wheeling-Pittsburgh Steel Corp. v. Mitsui & Co.*, 221 F.3d 924, 927 (6th Cir. 2000).

We cannot be certain that we have divined the legislative meaning correctly. But since we can't grill Congress on the matter, it is enough that we think our interpretation superior to the district court's, and we are fortified in that belief by the Sixth Circuit's decision.

The ruling by the district court is

REVERSED.